In re Richard Phillibert CROTEAU, Jr., Kathy Joyce Croteau, Debtors.

Carol I. Croteau, Plaintiff,

v.

Richard Phillibert Croteau, Jr., Defendant.

Bankruptcy No. 99-15020-SSM.
Adversary No. 99-1322.

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

March 15, 2000.

Gregory M. Van Doren, Robeson, Robeson, and Van Doren, Manassas, VA, for plaintiff.

James B. Toohey, Fairfax, VA, for defendant.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL,
Bankruptcy Judge.

Before the court is the motion for summary judgment filed by the plaintiff on January 31, 2000. A hearing was held on March 7, 2000, at which the plaintiff and the defendant were each present by counsel. There are no material facts in dispute, and the sole issue for determination is whether a prepetition arrearage owed under a child support order issued by a Virginia juvenile and domestic relations district court ("J & DR court") is dischargeable. The debtor asserts that a J & DR court is neither a "court of record" nor a "governmental unit," and that, accordingly, child support obligations decreed by such a court do not fall within the exception to discharge for support claims.

*Facts*

Richard Phillibert Croteau, Jr., filed a joint voluntary petition under chapter 7 of the Bankruptcy Code with his wife, Kathy Joyce Croteau, in this court on October 7, 1999. He has not yet received a discharge, but the chapter 7 trustee has filed a report of no distribution. Among the liabilities listed on the debtor's schedules was $18,635.00 owed to his former wife, Carol L. Croteau, as child support under an order of the Juvenile and Domestic Relations District Court of Prince William County, Virginia ("Prince William J & DR Court"). The order in question was entered on April 14, 1997, and required the debtor to pay Ms. Croteau $1,028.00 per month for the support of Elizabeth Croteau and Joseph Croteau, then 8 and 3 years of age, respectively. On August 10, 1999, the Prince William J & DR Court determined that an arrearage of $17,605.77 was due as of August 4, 1999. The Court

ordered the debtor to pay $1,500 of that amount by August 13, 1999, upon pain of imprisonment, which he apparently did.

The present adversary proceeding was commenced by Ms. Croteau on November 30, 1999, to determine the dischargeability of the arrearage claim. The debtor filed an answer, and the plaintiff thereafter filed the motion for summary judgment that is presently before the court.

### Conclusions of Law and Discussion

#### I.

This court has subject matter jurisdiction under 28 U.S.C. §§ 1334 and 157(a) and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. Under 28 U.S.C. § 157(b)(2)(I), this is a core proceeding in which final orders and judgments may be entered by a bankruptcy judge, subject to the right of appeal. Venue is proper in this district under 28 U.S.C. § 1409(a). The defendant has been properly served and has appeared generally.

#### II.

■ The sole issue before the court involves the applicability of the exception to discharge set forth in § 523(a)(5), Bankruptcy Code. Specifically, § 523(a)(5) provides that a chapter 7 discharge does not discharge an individual debtor from a debt

> to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree *or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit,* or property settlement agreement, but not to the extent that—
>
> (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned

pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

(emphasis added). Thus, a child support debt is not dischargeable if, among other things, it arises from an order of a "court of record" or from a determination made in accordance with state law by a "governmental unit." The defendant says that a J & DR court is neither a "court of record" nor a "governmental unit," and, accordingly, that support decreed by such a court can be discharged.[1]

#### A. Is the J & DR court a "court of record"?

■ In Virginia, the trial courts of general jurisdiction are the circuit courts established in each county and certain cities. Va.Code Ann. § 17.1–500 and 17.1–513. Circuit courts are expressly designated as courts of record. In addition to circuit courts, Virginia has a system of district courts with limited jurisdiction and which are designated as "courts not of record." Va.Code Ann. § 16.1–69.5(a). District courts are divided into two types: general district courts and juvenile and domestic relations district courts. Va.Code Ann. § 16.1–69.5(d). Notwithstanding its designation as a "court not of record," the jurisdiction of a J & DR court is remarkably broad and includes concurrent jurisdiction with the circuit courts over the custody, visitation, and support of a child whose custody, visitation, or support is a subject of controversy or requires determination. Va.Code Ann. § 16.1–241(A)(3).

■ At first blush, it might appear that Virginia's own designation of J & DR courts as "courts not of record" is determi-

---

1. The defendant's argument is directed only at the *arrearage* existing on the filing date; he concedes that the child support becoming due post-petition is fully enforceable.

native on that issue. However, § 523(a)(5) is a Federal statute of national application, and it is by no means clear that Congress intended local designations to be controlling. As the Fourth Circuit has explained in a similar context:

> The label a state gives its own courts, of course, provides some guidance on whether a judgment springs from a court of record, but it alone cannot be determinative. An individual state's reasons for labeling one tribunal a "court of record" and another "not a court of record" may have more to do with the jurisprudential history of the state than the present day competency of the particular tribunal.

*Air Power, Inc. v. United States,* 741 F.2d 53, 59 (4th Cir.1984) (internal citation omitted) (holding that a general district court in Virginia is a "court of record" for the purpose of determining priorities between an execution lien and a Federal tax lien). As the Court noted, "The factors the state weighed in reaching its labeling decision are almost certain to address different concerns than those implicated in federal tax policy." *Id.* Additionally, as the Court observed in *Air Power,* general district courts, notwithstanding their label as "courts not of record," have many of the attributes of Virginia's circuit courts and, viewed from the standpoint of procedure, are "difficult to distinguish ... from a 'court of record' as that institution was known at common law." *Id.* at 58. Additionally, orders of a general district court "can be enforced by the same mechanisms as the judgment of a circuit court" and are "entitled to the same preclusive effect from other state courts." *Id.* In short, "the label 'courts not of record' given to general district courts by the Virginia legislature, though no doubt serving a legitimate state purpose, is not entirely reflective of the true character or present day competency of those tribunals." *Id.* at 59.

■ Almost every characteristic that the Fourth Circuit noted in *Air Power* of a general district court in Virginia is also true of a J & DR court. Congress, in enacting § 523(a)(5), did not define the term "court of record." It can be presumed, however, that Congress intended the ordinary definition of that term: "A court that is required to keep a record of its proceedings, and that may fine or imprison." Black's Law Dictionary 353 (6th ed.1990). Virginia's statutory definition of a "court not of record" makes no reference to such characteristics but is simply based on jurisdictional level: " '*Courts not of record*' shall mean all courts in the Commonwealth below the jurisdictional level of the circuit courts including general district courts and juvenile and domestic relations district courts." Va.Code Ann. § 16.1–69.5(a). There is no contention that a J & DR court in Virginia lacks the power to fine or imprison for contempt. However, the records of J & DR court proceedings are not "permanently" recorded, since Virginia law allows them to be destroyed when they have outlived their usefulness. *Compare,* Va.Code Ann. §§ 17.1–123 and 17.1–124 (requiring clerk of circuit court to maintain and keep order books containing copies of all orders and judgments entered by the court), *with* Va.Code. Ann. §§ 16.1–69.55(c)(3) and 16.1–69.57 (allowing destruction of J & DR court dockets, documents, and indices for child support proceedings after the last juvenile involved has reached 19 years of age and 10 years have elapsed from dismissal or termination of the case). But aside from the fact that its records are not required to be permanently preserved, the J & DR courts possess all those functional characteristics of a court of record that were relied upon by the Fourth Circuit in *Air Power.* Accordingly, the court concludes that a support order of a J & DR court qualifies as an "order of a court of record" for the purpose of § 523(a)(5).

### B. *Is the J & DR court a "governmental unit"?*

Even if the J & DR court is not a "court of record" for the purpose of § 523(a)(5),

child support ordered by a J & DR court will nevertheless be nondischargeable if such orders constitute a "determination made in accordance with State ... law by a governmental unit." The term "governmental unit" is defined by the Bankruptcy Code as follows:

United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

§ 101(27), Bankruptcy Code. The defendant argues that the phrase "department, agency, or instrumentality of ... a State" logically refers only to executive branch or administrative tribunals and not to courts that are not "courts of record," since otherwise the language "court of record" would be rendered superfluous. However, there is nothing either in the plain language or legislative history of § 523(a)(5) to support such a crabbed reading.

As originally enacted as part of the Bankruptcy Code, § 523(a)(5) referred only to "support ... in connection with a separation agreement, divorce decree, or property settlement agreement." Bankruptcy Reform Act of 1978, § 101, Pub.L. No. 95–598 (Nov. 6, 1978). In 1984, the phrase "divorce decree" was expanded to read "divorce decree or other order of a court of record." Bankruptcy Amendments and Federal Judgeship Act of 1984, § 454, Pub.L. No. 98–353 (July 10, 1984). Finally, in 1986 the language "determination made in accordance with State or territorial law by a governmental unit" was added. Bankruptcy Judges, U.S. Trustees & Family Farmer Bankruptcy Act of 1986, § 281 Pub.L. No. 99–1986 (Oct. 27, 1986). The Joint Explanatory Statement of the Committee of Conference explained the purpose of the 1986 amendment as follows:

This provision *will expand the exception to discharge* in 11 U.S.C. § 523(a)(5) to embrace support determinations involving various types of processes or procedure (e.g. administrative, expedited judicial) and various forms of determinations (e.g., rules, orders.) Such determinations may be made by hearing officers or commissioners of agencies, subagencies, departments *or courts of counties, municipalities or states—* to cite some examples only.

H.R. Conf. Rep. No. 958, 99th Cong., 2nd Sess.1986, 1986 U.S.C.C.A.N. 5246 (emphasis added).

As noted, the statutory definition of "governmental unit" includes an "*instrumentality* of ... a State" (emphasis added). An instrumentality is defined as "Something by which an end is achieved; a means, medium, agency." Black's Law Dictionary 801 (6th ed.1990). Such a definition is clearly broad enough to embrace a state tribunal, whether administrative or judicial, having authority to make and enforce determinations of child support. Such a reading is furthermore fully consistent with the legislative intent as expressed in the conference report. There is simply no warrant, in light of the plain language of the statute, and its history of expansion, for arguing that Congress intended a narrow and restricted universe of nondischargeable child support orders that would exclude the orders of specialized courts such as a Virginia J & DR court. Accordingly, whether or not a J & DR court is a "court of record," it quite plainly qualifies as an "instrumentality" of the Commonwealth of Virginia, and therefore a "governmental unit," for the purpose of fixing and enforcing child support obligations.

III.

Since the Prince William J & DR court is, at the very least, a "governmental unit" as that term is used in § 523(a)(5), Bankruptcy Code, and also qualifies as a "court of record" under the Fourth Cir-

cuit's analysis in *Air Power*, its child support orders are nondischargeable. Since there is no dispute that the order in question was entered against the debtor, and no assertion that the Prince William J & DR court lacked jurisdiction to issue the order or that the order is not "actually" in the nature of support, the plaintiff's motion for summary judgment will be granted and final judgment will be entered for the plaintiff determining and declaring that the child support arrearage existing on the filing date of the debtor's bankruptcy petition is nondischargeable.[2]

---

**2.** Both in the complaint and in the summary judgment motion, the plaintiff requests the court to enter a money judgment for the amount of the arrearage. A bankruptcy court, when determining dischargeability, has jurisdiction to reduce a nondischargeable debt to a money judgment. *Harris v. U.S. Fire Ins. Co.*, 162 B.R. 466 (E.D.Va.1994). Here, however, the amount of the support arrearage has already been adjudicated by another court, and no function would be served by entering a separate money judgment. There does not appear to be any dispute as to the actual amount of the arrearage and the Prince William J & DR court is far better suited to monitor and enforce its payment.